IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL DAVID HOWER, #13630040,  *

     Petitioner,                *

v.                              *          Civil Action No. GLR-17-198

TIMOTHY S. STEWART, et al.,     *

     Respondents.           *
                          *****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Timothy S. Stewart, T. Connor, Randy Crane, and Holler's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 33).[1] Also pending before the Court are Plaintiff Michael David Hower's Motion for Summary Judgment (ECF No. 31), Motion to Add a Defendant (ECF No. 48), and Motion for Reconsideration of Court Error (ECF No. 51).[2]

---

[1] Hower, who was responsible for obtaining service on Defendants, obtained service on them only in their official capacities. The Government indicates that the Department of Justice has authorized individual capacity representation in this matter. (Defs.' Opp'n Pl.'s Mot. Rest. Order at 4, ECF No. 34). Counsel for Defendants moves for dismissal of the claims against them in their individual capacities. As the Court will explain infra, regardless of whether Hower brings his claims against Defendants in their individual capacities, official capacities, or both, his claims are unavailing.

[2] In addition, pending before the Court is Hower's Motion to Accept Affidavit (ECF No. 56). As a preliminary matter, the Court notes that Hower filed his Motion on September 10, 2018—nearly eleven months after Defendants filed their Motion. In his Motion, Hower requests that the Court accept an affidavit in which he attests that since the start of his incarceration at the Federal Correctional Institution in Cumberland, Maryland, he has not "purchased," "attempted to purchase," or "received publications that were sexually explicit" as defined by BOP policy 5266.1. (Hower Aff. at 1, ECF No. 56-1). Although Hower's Motion and Affidavit are untimely, the Court will grant Hower's Motion.

This Bivens[3] action arises out of federal Bureau of Prisons ("BOP") restrictions placed on Hower's computer access and receipt of certain publications, as well as the monitoring of his mail and telephone communications. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Defendants' Motion and deny Hower's Motions.

## I.    BACKGROUND[4]

### A.    Factual Background

Hower is a federal inmate incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland") in Cumberland, Maryland. (Pet. Writ Habeas Corpus ["Pet."] at 1, ECF No. 1).[5] In March 2008, a grand jury charged Hower with violating: (1) 18 U.S.C. § 2251, which prohibits the sexual exploitation of children; and (2) 18 U.S.C. § 2252A, which prohibits certain activities relating to child pornography. United States v. Hower, No. 1:08-CR-84, 2015 WL 13547583, at *1 (W.D.Mich. May 22, 2015); (Defs.' Mot. Dismiss Summ. J. ["Defs.' Mot."] Attach. A at 8, ECF No. 33-2). Specifically, Hower violated these statutes by: (1) enticing a girl between the ages of six and nine years old to engage in sexually explicit conduct for the purpose of producing 15 digital images using a digital camera and a computer; and (2)

---

[3] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[4] Unless otherwise noted, the facts outlined here are set forth in Hower's Petition, Supplements, and Amendments (ECF Nos. 1, 4, 6, 11, 19). To the extent the Court discusses facts that Hower does not allege in his pleadings, they are uncontroverted and the Court views them in the light most favorable to Hower. The Court will address additional facts when discussing applicable law.

[5] Citations to all of Hower's filings in this case refer to the pagination that the Court's Case Management and Electronic Court Filing system assigned them.

knowingly receiving child pornography that had been shipped through interstate or foreign commerce by computer. (Longacre Decl. ¶ 9, ECF No. 33-2).

On December 1, 2009, Hower pleaded guilty to these charges in the United States District Court for the Western District of Michigan. Hower, 2015 WL 13547583, at *1. He was sentenced to 420 months of incarceration. Id.; (see also Pet. at 2; Defs.' Mot. Attach. A at 9, ECF No. 33-2).[6]

Due to the nature of Hower's convictions, he is designated an "Adam Walsh Act" inmate. (Longacre Decl. ¶¶ 4–5; Defs.' Mot. Attach. B at 14, ECF No. 33-2). As a result, Hower is subject to BOP Program Statement 5394.01, Certification and Civil Commitment of Sexually Dangerous Persons.[7] (Longacre Decl. ¶¶ 4–5; see also Defs.' Mot. Attach. B at 11–12). Designation and Sentence Computation Center ("DSCC") staff review available documentation for each inmate upon entry into the BOP to determine whether the inmate has a history of unlawful sexual conduct and is therefore covered under Program Statement 5394.01. (Defs.' Mot. Attach. B at 12). The information DSCC usually reviews includes the Presentence Investigation Report, Judgment and Commitment Order, and Statement of Reasons. (Id.). Inmates with a history of unlawful sexual conduct, receive the case management assignment "WA W CONV" (WALSH ACT HISTORY WITH CONVICTION) or "WA NO CONV"

---

[6] Citations to Exhibit 1 to Defendants' Motion refer to the pagination that the Court's Case Management and Electronic Court Filing system assigned them.

[7] The Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 4248 (2018), authorizes the BOP "to certify individuals for civil commitment as sexually dangerous persons." (Defs.' Mot. Attach. B at 11).

(WALSH ACT HISTORY-NO CONVICTION). (Id.). Hower is designated "WA W CONV." (Defs.' Mot. Attach. C at 14, ECF No. 33-2).

Under BOP Program Statement 4500.11, Adam Walsh Act designated inmates, such as Hower, are automatically placed on a restriction for TRULINCS access.[8] (Defs.' Mot. Attach. D at 17–18, ECF No. 33-2). The warden may lift the automatic restriction.[9] (Id. at 17). Warden Stewart has not done so in Hower's case. (Longacre Decl. ¶ 6).

Additionally, where a computer is used in the commission of the inmate's offense, FCI Cumberland has an Institutional Supplement, CUM 1237.13, which restricts the inmate's computer access. (Longacre Decl. ¶ 7; Defs.' Mot. Attach. E at 20; Pet. Ex. 1, ECF No. 1-1).

As for the monitoring of communications generally, Special Investigative Services ("SIS") staff determine whether an inmate has "required monitoring status," i.e., all of the inmate's communication is monitored, including mail and telephone communications (Longacre Decl. ¶ 8). Program Statement 1380.11, which is a restricted and not available for the public or inmates to view,[10] provides that sex offenders who "actively used

---

[8] TRULINCS is the acronym for Trust Fund Limited Inmate Computer System. TRULINCS provides federal inmates with limited computer access, including sending and receiving electronic messages without access to the internet. Lopez v. Stewart, No. RDB-15-2747, 2016 WL 3257820, at *2 n.7 (D.Md. June 14, 2016), aff'd, 671 F.App'x 208 (4th Cir. 2016).

[9] The local sex offender management staff must first recommend that an inmate's email restriction be removed before the warden may exercise his discretion to remove the restriction.

[10] Program Statement 1380.11 is available to staff only on a need to know basis because it contains information about how SIS "conducts investigations as well as other information that if disseminated would compromise the safety and security of the institution." (Longacre Decl. ¶ 8).

communication devices to further their criminal or deviant behavior are placed on required[ ] monitoring status." (Id.). Inmates are notified if they are on restricted monitoring. (Id.). Hower has been on required monitoring status since he entered BOP custody in 2010. (Id. ¶ 10).

Hower challenges the restrictions on his email access under CUM 1237.13. (Pet. at 1). Hower "has TRULINCS access, but [his] computer 'no' status prevents email access with the public." (Suppl. at 5, ECF No. 4). He pleads that his lack of access to email hinders his communication with his attorney and access to legal services, religious services, and publications. (Pet. at 4; Addendum Cl. at 1–2, ECF No. 6). He alleges that two of his fellow inmates, Caudle, who was convicted of fraud, and Kerns, who was convicted of sex trafficking, which included posting ads on the internet for "sex for sale," are permitted computer access. (Pet. at 5–6; see also Suppl. at 4).

Hower alleges that on June 23, 2017, FCI Cumberland mailroom staff rejected publications that he had ordered because they were sexually explicit. (Mot. Am. at 2, ECF No. 19). He states that the publications contained photographs of young Asian models in bathing suits and lingerie, who look younger than their age. (Id. at 2). He notes that the company that sells the publication certifies that the models are over the age of eighteen and he states that the photographs "do not portray actual or simulated sexually explicit conduct or activity." (Id. at 3; see also Pl.'s Opp'n at 2, ECF No. 40).[11]

---

[11] With his Opposition, Hower filed copies of three pictures he states were rejected for him, (Exs. filed separately, ECF No. 40), although another inmate was allowed to have them. He does not indicate the name of the inmate.

Hower states that he learned on June 28, 2017, that BOP staff are monitoring all his telephone calls and mail beyond normal screening procedures due to the nature of his sexual offenses, rather than his actual conduct. (Mot. Am. at 1–2). He further alleges that unnamed BOP staff threatened retaliation against him for filing this lawsuit.[12] (Id. at 3–4).

## B.    <u>Procedural History</u>

On January 20, 2017, Hower filed his Complaint, as a Petition for Writ of Habeas Corpus, against Stewart challenging the BOP determination to deny him email access. (ECF No. 1). He later amended and supplemented the Complaint to add Defendants Conner, Crane, and Holler and to add claims concerning his telephone and mail surveillance and denial of photographs and publications.[13] (ECF Nos. 4, 11, 19). Hower

---

[12] In his Opposition, Hower alleges, for the first time, that after he filed an Administrative Remedy Request, "mailroom Officer Cannon" and other unidentified officers started rejecting a large number of his incoming publications and "claiming they were sexually explicit when they were not." (Pl.'s Opp'n at 2). Hower further alleges that some of his legal mail from the United States Court of Appeals for the Sixth Circuit was held back for almost two weeks. (Id. at 2). Likewise, in a filing titled "Affidavit for Immediate Consideration" and in his Opposition, Hower alleges that Dr. Hershberger, Chief Psychologist, threatened to transfer him to a treatment center for sex offenders if he continued ordering publications featuring young models. These allegations do not, however, appear in any of Hower's pleadings. Hower is "bound by the allegations contained in [his pleadings] and cannot, through the use of motion briefs, amend the complaint." <u>Zachair, Ltd. v. Driggs</u>, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) <u>aff'd</u>, 141 F.3d 1162 (4th Cir. 1998). The Court, therefore, does not consider these allegations.

[13] Hower faults Connor for allegedly stating on April 19, 2016 that if Hower's sex offense did not involve a minor, then he would be permitted to use email. (Suppl. at 4). Hower alleges that on April 21, 2016, he filed a BP-8 form with Connor to review the denial of his computer access but Connor never responded. (Id.). In March 2016, Hower filed a BP-8 form with Crane, who refused to change his email status. (Id.). Hower faults Stewart, as FCI Cumberland Warden, for the June 28, 2016 denial of his request for email access. (Id.; Mot. Amend at 1, ECF No. 19).

brings claims under the Free Speech Clause of the First Amendment of the United States Constitution challenging the restrictions on his email access, the surveillance of his mail and telephone communications, the rejection of sexually explicit publications, and for retaliation against him for filing this lawsuit. (Pet. at 4; Suppl. at 4, ECF No. 4; Addendum, ECF No. 6; Am. Pet. at 1, ECF No. 11, Mot. Am. at 1–2). Hower also brings equal protection and substantive and procedural due process claims under the Fifth Amendment. (Pet. at 4). Hower requests an unspecified amount of monetary damages for his "actual loss" and for the "daily stress of waiting for staff retaliation which will come." (Mot. Am. at 2).

On October 20, 2017, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 33). Hower filed an Opposition on November 1, 2017. (ECF No. 40). On November 13, 2017, Defendants filed a Reply. (ECF No. 42). Hower filed a Motion for Leave to File Surreply on December 22, 2017, (ECF No. 44), which the Court granted on January 19, 2018, (ECF No. 45).

On October 6, 2017, before Defendants filed their Motion, Hower filed a Motion for Summary Judgment. (ECF No. 31). Then, on February 15, 2018, Hower filed a Motion to Add Defendant. (ECF No. 48). On March 14, 2018, Hower filed a Motion for Reconsideration of Court Error. (ECF No. 51). Hower's Motions are unopposed.

## II.    DISCUSSION

### A.    Hower's Motions

#### 1.    Motion for Summary Judgment

Hower filed the Motion for Summary Judgment on October 6, 2017, before Defendants filed a responsive pleading. Hower's Motion for Summary Judgment, despite the caption assigned to it by its pro se author, is essentially a Motion opposing Defendants' Second Motion for an Extension of Time as a "stall tactic" and requests judgment in his favor on that ground. (Pl.'s Mot. Summ. J. at 2, ECF No. 31). Hower provides no grounds for summary judgment, and, in any event, the Motion was premature. Accordingly, the Court will deny Hower's Motion for Summary Judgment.

#### 2.    Motion to Add Defendant

In his Motion to Add a Defendant, filed almost five months after Defendants filed their Motion for Summary Judgment, Hower seeks to add Ian Conners, Administrator, National Inmate Appeals, as a Defendant. Hower alleges that Conners provided false testimony in a response to an appeal of one of Hower's Administrative Remedy Requests related to the decision to reject his publications as sexually explicit or containing nudity. (Mot. Add Def. at 1, 2, ECF No. 48; Defs.' Mot. at 2). Hower contends that Connor violated his First Amendment rights and "rights to a fair Administrative Remedy Appeal." (Mot. Add Def. at 2).

Rule 15(a) provides that a party may amend his pleading once as a matter of course within twenty-one days after service of a motion under Rule 12(b). Because Hower did not meet this deadline, the Court may permit him to add Connors as a

Defendant if "justice so requires." Fed.R.Civ.P. 15(a)(2). The Court should deny leave to amend when leave to amend would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. Wootten v. Virginia, No. 6:14-CV-00013, 2015 WL 1943274, at *2 (W.D.Va. Apr. 29, 2015).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d

435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).

Here, Hower asserts, in a conclusory manner, that Connors "lied" in his response because he did not "personally review copies of the rejected publications" before responding to Hower's appeal as required by BOP policy. (Mot. Add Def. at 1). Hower further states that Connor was "lying" in the response "to cover for the defendants and 'hide' Constitutional violations." (Id. at 2). Besides failing to provide any factual matter to support these allegations, the Connors' November 19, 2017 response, attached to Hower's Motion, belies Hower's assertion. It states:

> We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy. It has been determined that the publication was rejected in accordance with Program Statement 5266.11, Incoming Publications.[14]

(Update at 3, ECF No. 48-2) (emphasis added). Hower also provides no facts to support his assertion that Conner lied to cover Defendants' alleged constitutional violations.

_____

[14] Program Statement 5266.11 requires the Warden to "ensure a copy of the publication cover and one page of the banned information or material is copied and retained at the institution in case of a subsequent appeal by the inmate or publisher/sender." (Attach. at 2, ECF No. 48-1).

Thus, the Court concludes that it would be futile to permit Hower to add Connors as a Defendant. Accordingly, the Court will deny Hower's Motion.

### 3. Motion for Reconsideration

Hower moves for reconsideration of the March 7, 2018 Order that denied his Motion for a Restraining Order. (ECF No. 51; <u>see also</u> ECF Nos. 20, 50).

Rules 59(e) and 60(b) govern motions to reconsider final judgments. <u>See Fayetteville Inv'rs</u>, 936 F.2d at 1469. Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. <u>Bolden v. McCabe, Weisberg & Conway, LLC</u>, No. DKC 13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). If the Motion is filed later, Rule 60(b) controls. <u>Id.</u> Here, Hower filed his Motion on March 14, 2018. Accordingly, Rule 59(e) governs the Court's analysis.

A district court may only alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>United States ex rel. Carter v. Halliburton Co.</u>, 866 F.3d 199, 210 (4th Cir. 2017) (citing <u>Zinkand v. Brown</u>, 478 F.3d 634, 637 (4th Cir. 2007)). A Rule 59(e) amendment is "an extraordinary remedy which should be used sparingly." <u>Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998) (quoting Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2810.1, at 124 (2d ed. 1995)). Furthermore, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" <u>Lynn v. Monarch Recovery</u>

_Mgmt., Inc._, 953 F.Supp.2d 612, 620 (D.Md. 2013) (quoting _Sanders v. Prince George's_

_Pub. Sch. Sys._, No. RWT 08CV501, 2011 WL 4443441, at *1 (D.Md. Sept. 21, 2011)).

Here, Hower does not address any of the possible grounds for reconsideration.

Instead, Hower appears to believe that by denying his Motion for a Restraining Order, the

Court decided not to consider his claims of the rejection of his publications and

retaliation.   He is incorrect.   Hower added the claims regarding the rejection of his

publications and retaliation claim in his earlier filed Motion to Amend, which the Court

granted.   (See ECF Nos. 19, 21, 22).   Accordingly, the Court will deny Hower's Motion

for Reconsideration.

**B.     Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment**

**1.     Conversion of Defendants' Motion**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in

the alternative, for summary judgment under Rule 56.   A motion styled in this manner

implicates the Court's discretion under Rule 12(d).   See _Kensington Vol. Fire Dep't, Inc._

_v. Montgomery Cty._, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), _aff'd_, 684 F.3d 462 (4th

Cir. 2012).   This Rule provides that when "matters outside the pleadings are presented to

and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for

summary judgment under Rule 56."   Fed.R.Civ.P. 12(d).   The Court has "complete

discretion to determine whether or not to accept the submission of any material beyond

the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it,

thereby converting the motion, or to reject it or simply not consider it."   _Wells-Bey v._

_Kopp_, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C

Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Here, because the Court will consider materials outside the original pleadings, including Hower's and Defendants' declarations and verified exhibits, the Court will convert Defendants' Motion into a motion for summary judgment.

**2.     Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87

(1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3.    Analysis

Defendants move for summary judgment on six principal grounds: (1) Hower failed to exhaust his administrative remedies with regard to his phone and mail surveillance claim and rejection of publications claim; (2) Hower failed to serve the

individual Defendants; (3) sovereign immunity bars Hower's <u>Bivens</u> claims; (4) <u>Bivens</u>

does not provide equitable relief and the Prison Litigation Reform Act ("PLRA"), 42

U.S.C. §1997e (2018), bars damages for emotional distress absent physical injury; (5)

Hower fails to state a claim; and (6) Defendants are entitled to qualified immunity.  The

Court agrees that Hower fails to state a claim for violations of his constitutional rights.[15]

---

[15] The Court also agrees that Hower failed to exhaust his administrative remedies with regard to his mail and telephone surveillance claims and his return of publications claims.  The PLRA provides, in pertinent part, that: "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (2018).  In other words, a prisoner must exhaust administrative remedies before bringing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 202 (2007).  The weight of circuit authority indicates that a prisoner must fully complete the administrative process before filing suit in court.  <u>See, e.g.</u>, <u>Neal v. Goord</u>, 267 F.3d 116, 121–22 (2d Cir. 2001) (holding that inmates must exhaust before filing suit).

With regard to his mail and telephone surveillance claim, Hower concedes that he has not exhausted his administrative remedies.  Instead, Hower contends that he does not have to exhaust his administrative remedies because the surveillance "is a direct consequence for filing for change of computer status and civil suit."  (Pl.'s Opp'n 3d Surreply at 2, ECF No. 46).  Hower cites no case law for this proposition, and the Court has not found any.  In addition, Hower's mail and telephone communications have been monitored since he entered BOP custody.  (Longacre Decl. ¶ 10).  As a result, the Court concludes that Hower failed to exhaust his administrative remedies with regard to his mail and telephone surveillance claim.

As to his rejection of publications claim, Hower states that he filed his administrative remedy request on August 17, 2017—seven months after he filed this action in January 2017.  Hower, therefore, failed to exhaust his administrative remedies before filing this suit.  Nevertheless, he asserts that "[t]here was no time to file an Administrative Remedy Request" and "even if he did, they would lie Anyway [sic]."  (<u>Id.</u> at 4).  "[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."  <u>Graham v. Gentry</u>, 413 F.App'x 660, 663 (4th Cir. 2011).  Hower provides no facts to corroborate this assertion, and the record shows his administrative remedy requests received due consideration.  Thus, the Court concludes that Hower failed to exhaust his administrative remedies as to his rejection of publications claim.

### a.    **Bivens** Claims

A <u>Bivens</u> action is a judicially-created monetary remedy designed to vindicate violations of constitutional rights by federal actors in their individual capacity. <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 395–97 (1971). To state a <u>Bivens</u> claim, a plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated his constitutional rights. <u>Id.</u> at 389. A <u>Bivens</u> action will not lie against federal agencies or federal officials in their official capacity. <u>FDIC v. Meyer,</u> 510 U.S. 471, 484–86 (1994); <u>Doe v. Chao</u>, 306 F.3d 170, 184 (4th Cir. 2002). Specifically, sovereign immunity bars constitutional claims for monetary damages against federal officials in their official capacity. <u>See</u> <u>Angelina v. Cumberland FCI Health Servs., et al.</u>, 2017 WL 1025720, at *4 (D.Md. Mar. 15, 2017). Further, in the absence of any allegations of physical injury, a prisoner is not entitled to damages for emotional stress under the PLRA. 42 U.S.C. § 1997e(e).

Here, Hower requests unspecified damages for the rejection of his publications not only for his "actual loss but the daily stress of waiting for staff retaliation, which will come." (Mot. Am. at 4). Hower does not particularize or provide evidence of "actual loss" or state the amount of damages he seeks. Nor does Hower allege any physical injury. As a result, to the extent Hower seeks money damages from Defendants in their official and individual capacities, the Court will dismiss those claims. <u>See</u> <u>Angelina</u>, 2017 WL 1025720, at *4; 42 U.S.C. § 1997e(e). The Court next considers Hower's constitutional claims.

### b.     Constitutional Claims

The Supreme Court has recognized that substantial deference should be accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.  Overton v. Bazzetta, 539 U.S. 126, 132 (2003); see also United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). Legitimate penological objectives that warrant limits on the exercise of inmate rights include rehabilitation of prisoners and deterrence of crime.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). A plaintiff bears the ultimate burden of showing a prison regulation is unconstitutional.  See Covino v. Patrissi, 967 F.2d 73, 79 (2d Cir.1992); see also Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

In this case, Hower alleges violations of his First Amendment right to free speech and right to be free from retaliation for exercising his free speech rights.  Hower also asserts violations of his Fifth Amendment equal protection and due process rights.  The Court addresses Hower's claims in turn.

### i.     First Amendment Claims

Restrictions that substantially burden an inmate's First Amendment rights are permissible if the restrictions are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987).  Turner identified four factors for courts to consider in making this determination: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating

the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. 482 U.S. at 89–90.

### aa. Email Access

Hower contends that the restriction on his access to TRULINCS email prevents him from accessing legal and religious services and publications in violation of his First Amendment right to free speech. Hower misunderstands his First Amendment rights.

Inmates do not have a First Amendment right to access email or TRULINCS. See, e.g., Grayson v. Fed. Bureau of Prisons, 2012 WL 380426, *3 (N.D.W.Va. Feb.6, 2012) (citing Rueb v. Zavaras, 2011 WL 839320, *6 (D.Colo. Mar. 7, 2011) (stating that prisoners do not have a First Amendment right to access email); Edington v. Warden of FCI Elkton, 2015 WL 1843240, at *3 (N.D.Ohio Apr. 22, 2015) (same); Bristow v. Amber, 2012 WL 1963577, at *2–3 (S.D. Ohio May 31, 2012) (same); Holloway v. Magness, No. 5:07cv88, 2011 WL 204891, at *7 (E.D.Ark. Jan.21, 2011) (same).

In addition, BOP's restrictions on Hower's computer access pass muster under Turner's four-factor test. First, Hower acknowledges that he is denied computer access due to his sex offense conviction involving a minor. (Pet. at 4). Because Hower used a computer to perpetrate his offense, he was denied computer access under the FCI-Cumberland supplement, CUM 1237.13. CUM 1237.13 promotes institutional security and inmate rehabilitation—legitimate and neutral government objectives. Second, Hower has other means of communication available to him including the use of telephone, mail, and visitation privileges. Third, permitting inmates whose email access is restricted

under CUM 1237.13 to have email access would not serve to rehabilitate prisoners or preserve scare prison resources. Fourth, Hower does not identify any alternatives, nor are any readily apparent.

Further, Hower cites no specific instances where he has suffered any actual injury. He fails to allege any missed court deadlines, specific instances when he has been unable to contact his attorney due to lack of email access, or missed religious services as a result of his restricted computer access.

Thus, the Court concludes that Hower fails to allege a violation of his First Amendment rights related to his lack of access to email.

### bb.     Mail and Telephone Surveillance

Hower asserts that mailroom staff violated his First Amendment rights by surveilling his mail and telephone communications. The Court disagrees.

Of import here, Hower does not allege that he is prohibited from making phone calls or sending or receiving mail. Rather, he takes issue with BOP surveilling his communications. Absent any allegations that the surveillance restricts his ability to communicate in any way, let alone substantially limits it, the Court concludes that Hower fails to establish a violation of his First Amendment rights as to this claim. See Turner, 482 U.S. at 89.

### cc.     Rejection of Publications

Hower claims that mail room staff violated his First Amendment rights by rejecting ten incoming publications on June 23, 2017 and seven incoming publications on

June 28, 2017 because they contained photos of young looking Asian women that prison officials deemed sexually explicit. The Court disagrees.

Inmates have a limited right to send and receive mail. See Roberts v. North Branch Corr. Institution, 2016 WL 1077104 at *8 (D.Md. March 18, 2016) (sending and receiving mail); Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006); Valdez v. Rosenbaum, 302 F.3d 1039, 1048–49 (9th Cir. 2002) (telephone)). In Thornburgh v. Abbott, 490 U.S. 401, 404 (1989), the Supreme Court applied the Turner factors and upheld restrictions placed on the receipt of outside publications by convicted prisoners. The Supreme Court considered and held valid 28 CFR §§ 540.70 and 540.71, the regulations that Program Statement 5266.11 implements. The Court explained, "[T]he broad discretion accorded prison wardens by the regulations here at issue is rationally related to security interests" and "alternative means of expression remain open to inmates because a wide range of publications to be sent and received are permitted." Thornburgh, 490 U.S. at 416–17.

Here, like Thornburgh, the rejection of Hower's publications pass constitutional muster under Turner. First, Program Statement 5266.11, which permits BOP officials to reject incoming publications as sexually explicit is reasonably related to the legitimate penological interest of rehabilitating sex offenders. See Thornburgh 490 U.S. at 415. And the BOP makes an individualized determination regarding the publications. See id. at 416. Second, Hower does not meet his burden of demonstrating that there are obvious, easy alternatives to the regulation. See id. at 418. Nor does he propose a readily available alternative that serves institutional security, rehabilitation objectives, and

preserves finite institutional resources for reviewing incoming mail for inmates. <u>See</u> <u>id.</u> Further, like his email access claim, Hower does not explain how he was actually harmed by the return of the materials, nor does he state how returning these materials suppressed his constitutional right of free speech.

Thus, the Court concludes that Hower fails to state a First Amendment claim related to the rejection of his publications.

### dd. Retaliation

Hower alleges that "[h]e has been told that there will be retaliation by staff" for amending his Complaint to add allegations that his mail and telephone communications are subject to "strict scrutiny" and that certain publications he ordered are being rejected. (Mot. Am. at 3). Hower further pleads that Defendants should be held liable for "the daily stress of waiting for staff retaliation, which will come. (<u>Id.</u> at 4). Of import here, is that Hower fails to allege any concrete acts of retaliation that have actually occurred—he only asserts that the retaliation "will come." (<u>Id.</u>). Absent allegations of conduct that could be deemed retaliatory or the names of individuals who engaged in such conduct, the Court concludes that Hower fails to state a retaliation claim.

In sum, Hower fails to state a claim for violations of his First Amendment rights related to computer access, mail and telephone surveillance, the rejection of his publications, and retaliation. Accordingly, the Court will grant Defendants' Motion as to Hower's First Amendment claims.

### ii.     Fifth Amendment Claims

### aa.     Equal Protection

Although the Fifth Amendment does not contain an explicit Equal Protection Clause, "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." Washington v. Davis, 426 U.S. 229, 239 (1976) (citing Bolling v. Sharpe, 347 U.S. 497, 498–99 (1954)); see Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975).  Equal protection principles dictate that similarly situated persons be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  Id.

### 1.     Email Access

Hower alleges that two inmates who are similarly situated to him are permitted to have email and computer access.  First, Claude, who was convicted of fraud.  Second, Kerns, who was convicted of sex trafficking and used a computer in the commission of his offense.  (Id.).  In addition, Hower maintains that CUM 1237.13 is administered maliciously and in bad faith.  The Court is not persuaded.

Here, neither of Hower's comparitors provides grounds for an equal protection violation. Claude was convicted of a fraud offense, not a sex offense, and therefore is not similarly situated. Likewise, although Kerns' conviction was for sex trafficking, he did not use a computer in the commission of his offense of conviction. (Longacre Decl. ECF ¶ 13). In short, Hower's argument fails because inmates convicted of fraud or computer crimes are not similarly situated to him—they are not convicted child sex offenders.

Hower also provides no evidence that Defendants intentionally or impermissibly treated him differently from other sex offenders who used a computer in the commission of their offenses. He acknowledges that staff told him they are following BOP policy that denies computer use to sex offenders. (Pet. at 1; Suppl. at 4). Indeed, Hower expresses his own understanding that the restrictions are based on his sex crimes against minors and "out of fear he would contact minors." (Pet. at 4).

Thus, the Court concludes that Hower fails state an equal protection claim related to the restriction on his email access.

### 2. Mail and Telephone Surveillance and Rejection of Publications

Hower alleges that he is on a "special list" of inmates who receive "intense scrutiny" of their mail and telephone communications, unlike the majority of the inmate population. At bottom, the Court concludes that Hower fails to establish an equal protection claim related to mail and telephone surveillance and the rejection of his publications.

Here, although Hower asserts that he is on a list of inmates whose mail and telephone communications receive extra scrutiny, he provides no evidence of such a list. Of import here, however, is that Hower fails to show that other similarly situated inmates receive lesser monitoring or receive the publications he ordered that were returned. Nor does he establish that Defendants have purposefully discriminated against him. With regard to the rejection of his publications, Hower "in substance alleges discrimination against the publications he wishes to procure." Thompson v. Patterson, 985 F.2d 202, 205 (5th Cir. 2002). Prison authorities have discretion to make these determinations, and "absent any allegation of an improper motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief." Id.

In sum, none of Hower's allegations state an equal protection violation regarding his email access, mail and telephone surveillance, and the rejection of his publications. Accordingly, the Court will grant Defendants' Motion as to Hower's equal protection claims.

### bb.    Due Process

Hower raises a substantive due process challenge to his lack of access to TRULINCS email and a procedural due process challenge to his mail and telephone surveillance.

### 1.    Email Access

Hower alleges that Defendants violated his procedural due process by interfering with his protected liberty interests in TRULINCS created by CUM 1237.13. Hower also

maintains that CUM 1237.13 is overly vague and allows staff to discriminate against him due to the nature of his offenses. The Court disagrees.

Prison regulations are designed to guide correction officials in the management of the facility, not to confer rights on inmates. Sandin v. Conner, 515 U.S. 472, 482 (1995). An internal policy of a prison facility does not by itself create a constitutionally protected liberty interest. Riggins v. Green, No. PJM–09–289, 2009 WL 7042240, at *3 (D.Md. May 21, 2009), aff'd, 332 F.App'x 867 (4th Cir. 2009). Indeed, BOP program statements are "not 'laws' that cannot be broken." Christensen v. United States, No. 5:14-134-DCR, 2014 WL 6774862, at *3 (E.D.Ky. Dec. 2, 2014); see also Reeb v. Thomas, 636 F.3d 1224, 1227–28 (9th Cir. 2011) (stating that "noncompliance with a BOP program statement is not a violation of federal law"). Rather, BOP program statements are only internal agency guidelines and manuals that do not create enforceable substantive rights. Christenson, 2014 WL 6674862, at *3 (citing United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990)). And a failure of prison officials to follow their own internal policies, procedures, or regulations does not, by itself, amount to a constitutional violation. Weatherholt v. Bradley, 316 F.App'x 300, 303 (4th Cir. 2009) (per curiam) (quoting Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)). Nor does the violation of a BOP program statement rise to the level of a constitutional violation that is cognizable under Bivens. McDonald v. United States, No. 2:07CV82, 2008 WL 4615017, at *4 (N.D.W.Va. Oct. 14, 2008), aff'd, 325 F.App'x 212 (4th Cir. 2009).

Here, CUM 1237.13 does not create a constitutionally protected liberty interest to TRULINCS or email. As a result, Hower does not have the right to a hearing prior to the

introduction of restrictions on his computer access. To the extent Hower attacks CUM 1237.13 as vague and discriminatory, the policy is specific: it applies against inmates who used computers in their offense. The Court, therefore, concludes that Hower fails to state due process claims related to his TRULINCS and email access.

### 2. Mail and Telephone Surveillance

To the extent Hower intends to bring a due process claim related to his mail and telephone surveillance, this claim fails. He posits that the "intensive surveillance" of his mail and telephone communications violates his due process rights because he is punished "above the normal inmate population" and has not received a hearing to consider "this intense scrutiny." (Mot. Am. at 1, 4). Hower does not, however, identify a protected liberty interest that may trigger the need to a due process hearing. See Sandin, 515 U.S. at 484. In addition, Hower's factual allegations do not rise to the level of harsh or atypical conditions beyond that which is generally inherent in the "ordinary incidents of prison life." See id. Thus, the Court concludes that Hower's allegations fail to implicate any right to due process.

In sum, none of Hower's allegations rise to the level of First or Fifth Amendment violations. Accordingly, Defendants are entitled to judgment as a matter of law and the Court will grant Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Hower's Motion for Summary Judgment (ECF No. 31), Motion to Add a Defendant (ECF No. 48), and Motion for Reconsideration (ECF No. 51). The Court will grant Hower's Motion to Accept

Affidavit (ECF No. 56).  The Court will also grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 33).  A separate order follows.

Entered this 14th day of September, 2018

_____/s/_____
George L. Russell, III
United States District Judge
